Good morning, honorable judges. If it pleases the court, I would like to preserve three minutes for reporting. This case involves a claimant who sustained injuries from work. He underwent surgery in 2010. After the surgery, he returned back to work against his own doctor's advice. He did so because he had an obligation to his family, he told DLJ. He did so because he worked for a friend who understood his medical problems and allowed him to take breaks when he wanted. He did so because he loved his job. After he returned to work, his condition began to deteriorate. In 2012, excuse me, in 2012, he left his job for medical reasons. He later on filed an application for disability, and the reason the doctors found that he was disabled were the hardware in his back that they installed during the surgery. He had huge lumps on his ankle. He also suffered from depression as a result of those conditions. Not the state agency physician, not the commissioner's physician, not DLJ disputed these facts. So when he returned to work, excuse me, strike that. When he filed the application for disability, he indicated that he has constant pain in his back. He has constant pain in his neck. He had huge lumps on his ankles, and as a result of that, he could not walk. The pain from those huge Counsel, your time is going quickly, so I'd like to tell you what's bothering me about this record. The claimant here told the ALJ that he could not be up for more than about 30 minutes at a time, that he couldn't lift more than a gallon of milk, which would weigh between two and three pounds. And there doesn't seem to be any corroboration for that, for the severity of the symptoms he described in any of the medical records. His own doctors, certainly the state's examining doctors, there just doesn't seem to be anybody who could confirm the severity of that. They put him on flexibility tests. They put him, they watched him as he walked. Everybody acknowledges he's had back surgery. We would expect there to be some consequences from that. We understand he had problems with his ankles. We understand he's being treated for depression. All of that is acknowledged, but not to the degree that the claimant has. And so the ALJ, who heard the testimony from the claimant about what he could do, and then reviewed the medical records, said, I don't think you're credible. I think you are over, I think you have overstated what you can do. So what's wrong with the ALJ's findings? The ALJ is flatly wrong, because the ALJ in no place in his decision made any comment or any reference to the main reason this claimant is disabled. It's not because of the abnormalities in his back. That's not the reason. The reason he's disabled is because of the surgical hardware in his back. Dr. Oppau, who treated this claimant for more than three years, consistently indicated that that is the reason he has those symptoms. The state agency doctor made no reference to that. The state agency doctor, in fact, in his examination, it is highly questionable that the information in that document came from that examination. So this court has to look at the reason that this claimant is disabled. So where does Dr. Oppau tell us that he is disabled? Dr. Oppau said, Dr. Oppau consistently I'm looking at page, I'm looking, for example, at Dr. Oppau's report on page 262 of the record. He says the symptoms, the patient's systems with respect to the lumbar spine, not bad enough to warrant a CT scan at this time. Then his treatment plan number four says, I told the patient about removing the hardware, but he does not wish to undergo this at this time, because his symptoms are not bad enough. That was before we filed the disability claim. Okay. So tell me where in Dr. Oppau's reports we learn that the claimant is, Mr. Miller, is disabled? Well, Dr. Oppau took the claimant off work because he determined that he was disabled. Okay. Where? Where is that finding? So 266, he says, I'm taking him off work. He says he's having a lot of stress. If the court looks at the district court's, both the DLJ's and the district court determination decisions, they will find that one of the reasons that DLJ provided the claimant with the disability claim is because the claimant is disabled. Well, that's a deal, that's just simply an ultimate, an ultimate question. But he says, I do recommend that he be put on temporary disability. Page 273, and again at page 276, he says, he acknowledged, the doctor says, I do not feel he can go back to any heavy work, which the ALJ completely agreed with the doctor on that. Yes, Your Honor, I mean, what the doctor was saying at the time, you have to look at the whole totality of the claimant. He was saying that he could not lift, he could not bend, and he was in a lot of pain. If you can't lift, you can't bend, and you're in a lot of pain, the reference to heavy work doesn't necessarily mean he was talking about the claimant going back to his work or heavy work as is understood by, I mean, as provided by the commissioner or stated in the regulation. He was just making a general comment about heavy work. But the fundamental fact is that he took him off work because he was in a lot of pain, he couldn't lift, and he couldn't bend. He was in a lot of stress, that's true. But that's not the reason. So what's the principal mistake that the ALJ made? The principal mistake the ALJ made was it was focusing on abnormality that the imaging studies revealed, ignoring the fact that the problem that this gentleman had was the hardware in his back. Counsel, could I ask where that insight about the fundamental aspect of your case fits within the four issues that you presented in your brief? Because we can't, we're not the ALJ, but if you find some legal basis for saying that what the ALJ did lacks substantial evidence, where does that fit? You've got four points here, right? You're not talking about the remand right now, are you? Well, I'm not talking about remand. Number one is the rationale for discounting his allegations are conclusive. You're not talking about that right now, right? I'm sorry? Point two of your brief is not what you're talking about right now, right? No, that's part of the credibility issue. Which part of your brief are you talking about when you say that the whole issue here has to do with the hardware? Well, it's a question about your brief is what I'm asking. Where in your brief do you make that argument? Under what heading? It's under the credibility issue. Which one is that? And that would be the number two credibility issue. It also goes to the RFC. So the ALJ was conclusory and not persuasive, is that the part? Well, no. It is in the argument where I stated that the ALJ focused on the abnormalities on the ______. I mean, you say that's the core of your case, so I just want to make sure I'm finding where it is in your brief. It is in my brief, Your Honor. I know, but I'm trying to find where so that I can focus on it, because that's what you want us to focus on, right? Yes. We also need to focus on the fact that the doctor, a state agency doctor who provided the examination, did not find that the did not disagree that the hardware in the back of the clement is the reason that he was having a lot of back problems. And also, he didn't address the ankle problem. Therefore, they cannot rely on that examination by the state agency doctor in determining whether or not the ankle problem, the ALJ's determination is correct, because he never addressed it. Okay. And we cannot rely on it. Thank you. I didn't mean to take you out of your argument. I just wanted to identify where you were. Thank you. Counsel, you're down to just a few seconds. Would you like to reserve some time for rebuttal? Yes, I did, Your Honor, three minutes. Well, you're down. You have six seconds left of your total time. Oh, shoot. But I'm going to give you some time for rebuttal. Okay. Okay. Why don't we reserve your time? Thank you. Thank you. Let's hear from the government. Good morning, Your Honors, and may it please the Court. Daniel Talbert on behalf of the APALE Nancy A. Berryhill. This is a case where six different doctors gave opinions indicating that the claimant, Mr. Miller, had non-disabling impairments and limitations. I want to get right to the points that my friend on the other side was discussing with the panel during his argument, specifically the issues with Dr. Upal's opinion and the issue with the claimant's surgical hardware from his lumbar fusion in 2010. The first point I want to make there is that the claimant has taken the position that the reason he stopped working in early 2012 was because his condition had deteriorated. But as I think we note in the brief, the record here shows that at the time the claimant stopped working in February to March 2012, objective imaging showed that the claimant's lower back, the fusion, the hardware in there, and everything was unchanged from December of 2010. So the assertion that he stopped working in late February, early March 2012 was because of some deterioration in that condition. The record actually undermines that. And it shows instead on page 247, I think, of the administrative record that the claimant stopped working because he was being harassed and verbally abused and mistreated by some of his coworkers and was stressed out at work because of that. And the situation was a rather deplorable situation. I think anyone looking at the record and looking at what was happening with his coworkers would agree that most people probably would want to stop working if they were in that situation. So I just want to make that point and point out that that's what the record shows there. With respect to Dr. Upal specifically, Dr. Upal notes on a couple of occasions that the claimant might want to have this surgical hardware removed. But as Judge Bybee noted, the first time he makes that recommendation in November 2011, the claimant declined and said, well, my symptoms aren't severe enough to warrant it. But he seems to be arguing that the ALJ doesn't address this. That seems to be your opponent's main argument. So I would say the ALJ does address this, actually. And this is, if I turn to the ALJ's decision on page... I know the ALJ mentions, I'm having a little bit of difficulty finding it right now, unfortunately, but the ALJ mentions that the claimant declined to proceed with aggressive treatment, declined to proceed with the surgery. And that is certainly indicative of a finding of the claimant's allegations of disabling pain were not consistent with the record. I'll try to find that exact reference. Page 14 of the administrative record, that's where the ALJ notes that the claimant declined to have the surgery. Yes, it's on the bottom of page 14. Moreover, although the record shows that the claimant's treating physician recommended that he undergo hardware removal surgery, the claimant reported that he does not wish to undergo this at this time because his symptoms are not bad enough. Thank you. So the ALJ made that finding, said that the claimant had declined to proceed with that surgery because he said he simply didn't need it. His symptoms didn't warrant it. And I want to point out that Dr. Upal's opinions throughout the record, they don't state, well, because of this surgical hardware, because of this whatever's going on there, this claimant has disabling pain. He can't do any work, can't do anything at all. He said that the claimant couldn't go back to heavy work or heavy type of work. And as I think Judge Bybee noted earlier, that's consistent with what the ALJ said. I don't even see that Dr. Upal is particularly contrary to the ALJ's conclusions. I mean, I think Upal's findings are actually fairly consistent with that of other doctors. It just doesn't support Mr. Miller's claims as to how disabled he is. Everybody agrees he's probably in some pain. You don't undergo back surgery and have problems with your ankles like he's got, and nobody ought to dispute the reality of depression. But it's just the question is, you know, can he really only lift two to three pounds and does he have to lie down all day? That's right, Your Honor. We agree entirely with that. I mean, the ALJ disagreed with Dr. Upal only to the extent that Dr. Upal was saying, well, he's disabled or he should be on temporary disability. And the ALJ said, well, that's an issue that's reserved to the commissioner, and that's not consistent with what the record shows. But really, as Your Honor said. That seems like sort of a technical quibble with what Dr. Upal does, because I didn't really see him as sort of usurping the commissioner's prerogatives here so much as just saying, yeah, I recommend that maybe he shouldn't go back to be back at work full time, or he needs to have lighter work than what he's currently got. Sure. And again, that's consistent with what the ALJ concluded in his decision. On the issue, the only other issue I want to really talk about, unless the panel has questions, is the credibility or symptom evaluation. The claimant had made the argument about how that was his main focus, what he wanted specifically to focus on, and that the ALJ just didn't consider the claimant's allegations. Our position is the ALJ certainly did and gave a number of good reasons, reasons that were clearly supported by substantial evidence, supported by this Court's case law and by the regulations. Your Honor noted the claimant's rather extreme allegations of what limitations he had and how they're just inconsistent with what every doctor said. I'd also like to point out the findings of symptom magnification from consultative examiner Dr. Waganowicz's opinion. The fact that the claimant generally did have fairly conservative treatment during the relevant period, and that treatment was fairly effective in resolving and keeping his pain at rather low levels. What about the new evidence related to his ankles that surfaced after the ALJ ruled? Why wasn't the district court, why wouldn't it have been better for the district court perhaps to remand so that the ALJ could take that evidence into account? So the district court properly found that that evidence wasn't material because, and there's really a couple of reasons. The first primary reason the district court addressed was that it related to a later period. It wasn't applicable to the period under review by the ALJ. And unlike, I'm sorry. Just let me on that point though. But the claimant definitely had the lumps or whatever it was in his ankle at the time of the hearing, right? He actually showed it, I think, to the ALJ. Isn't that the same condition for which he later got the surgery? So it looks like it was likely the same condition. There's no indication in the record before the ALJ that anyone recommended surgery. So to the extent that the condition worsened after the ALJ's decision to require surgery, again, that wouldn't be material and wouldn't warrant remand for new and material evidence. But I'd also point out that even when the claimant had surgery after the ALJ's decision for his ankle, as we note in the brief, the surgery seemed to be successful. The only residual effect was that he had some numbness, and the doctors told him, well, you should go to physical therapy, which is a conservative measure, and you shouldn't walk barefoot. You should wear soft padded shoes. So if the surgery, even if he had this condition that would have warranted surgery during the relevant period, the fact that the surgery was effective and that there was no workplace limitations or functional restrictions imposed on him other than wearing comfortable shoes and not walking barefoot, indicates that they're just that later evidence, even if the ALJ had considered it. Sorry, even if it had been before the ALJ, it wouldn't have changed anything. Should he have filed a new claim with a later date of the onset? He certainly could have done so, and I believe, and I don't think this isn't in the record, but I believe he did file a new application. Is that still pending? My understanding is that it is, but, again, I can't represent that with absolute certainty. It's not in the record. But absolutely, what he should have done was file a new application, and the agency would consider that and consider whether his condition worsened and he had other symptoms, other impairments. I see my time is running a little bit low. I really don't have any other statements or comments to make, so unless the panel has any further questions, we would ask the Court to affirm the ALJ's decision. Okay. Thank you, Mr. Talbert. Thank you, Ron. Mr. Iwanicki, I'll give you some time. Thank you, Your Honor. The deterioration in the Clemens condition that my Leonard counsel was talking about is the deterioration in the pain, not the hardware in the back. I reemphasize, and my Leonard counsel didn't report that fact, that the hardware is the reason this Clement was complaining about pain. My Leonard counsel said that in 2011 he was told to take out the surgical hardware. That was before the onset date. That was before the onset date. The onset date, and he last worked in 2012, many months after. He didn't point to any evidence showing that he declined that surgery during the relevant period. Clement didn't stop work because of harassment. The ALJ didn't say that. The district court didn't say that. They didn't say that in the district court. He stopped work because of the fact that his pain got worse. The district, let me make this point. I think that summarizes everything. The district court found that even though he underwent all this treatment, he was still suffering from significant pain. That's what the district court found. So all this dance about whether he's credible or not credible ignores the fact that the district court said that. His own doctors said that. His wife said that. He said that. So where else do we have a controversy or inconsistency in regards to the Clements' own statement? Finally, the ankle. We're not talking about whether or not the residual problems he had after the surgery were answered remanded. What we're talking about is whether the condition that existed at the time the ALJ made the decision, in combination with all his other problems, justifies the ALJ's decision. He doesn't, because if the ALJ had that MRI, he would have known. He would have seen the extent of that ankle surgery. He didn't have that privilege. The case should be sent back to him, given an opportunity to do so. Finally, his symptom was never under control. The district court made that determination. It was never under control. The commissioner's attempt to retry this case before this court should be ignored. That's not where it should be tried. The ALJ should have done that. Not the district court, not this court, and definitely not the commissioner. So those are the three facts that I would like to make in rebuttal to the conditions that, I mean, the statements that my learner counsel made. And I reemphasize, when the court looks at the fact that no doctor disagreed with the hardware as the main reason, and if the court looks at the fact that the ALJ focused entirely on the hardware. Thank you very much.
judges: Rogers, Bybee, Watford